JERRY E. SMITH, Circuit Judge:
Console supervisors at a refinery alleged that their employer, CITGO Refining and Chemicals Company, L.P. (“CITGO”), misclassified them as exempt from the over *314 time pay requirements of the Fair Labor Standards Act (“FLSA”), 29 U.S.C. §§ 201-219. In two separate discovery sanctions, the district court dismissed twenty-one of twenty-four plaintiffs.[1] After granting CITGO’s motion to exclude testimony regarding damages by the three remaining plaintiffs, the court granted summary judgment for CITGO based on plaintiffs’ inability to prove damages; the court, however, reduced CITGO’s award of taxable costs. We affirm the summary judgment but reverse and render the award of costs.
I.
CITGO served plaintiffs with requests for discovery and interrogatories. After CITGO alleged that plaintiffs’ responses were deficient, the district court entered its first discovery order, requiring plaintiffs to produce documents and respond to interrogatories. CITGO again complained of plaintiffs’ continued noncompliance, whereupon the court entered a second discovery order requiring plaintiffs to preserve documents, respond to specific interrogatories, and produce documents. The court scheduled an evidentiary hearing and warned that “[pjlaintiffs who are found to have violated this Court’s Order to preserve their notes and/or documents, will have their claims dismissed.”
After two evidentiary hearings that included live testimony from eighteen plaintiffs, the court concluded that seventeen of them “had failed to participate in discovery, failed to properly supplement responses, and failed to preserve documents.” Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v), the court dismissed the claims of all seventeen as a discovery sanction.[2]
CITGO moved for summary judgment on the merits, contending that the seven remaining plaintiffs were exempt from the overtime-pay requirements of the FLSA pursuant to the exemptions for administrative, executive, combination, and highly compensated employees; and that liability, if any, must be calculated pursuant to the fluctuating-workweek method and was subject to a two-year statute of limitations. The court did not rule on CITGO’s summary-judgment motion before four additional plaintiffs were dismissed for further discovery violations.
As part of its second discovery order, the court instructed plaintiffs to “produce either: (1) the emails that are responsive to Interrogatory No. 16 and/or Request for Production No. 41; or (2) a list of all of their respective personal email addresses, along with the relevant account names and passwords.” Further, “[i]f any Plaintiff deletes any of his personal emails after the date of the entry of this Order, the Court will impose on that Plaintiff a monetary sanction of one hundred dollars ($100) for each deleted email.”
Among the plaintiffs who elected to disclose their email accounts and passwords, three deleted emails notwithstanding the order, and a fourth made no effort to preserve the contents of his inbox. Following a further evidentiary hearing, the court gave the offending plaintiffs the option of “either: (1) dismissal of their claims against CITGO with prejudice; or (2) ... *315 monetary sanctions.... Plaintiffs elected to dismiss their claims against CITGO with prejudice.”
Giving no reasons, the court denied ClT-GO’s motion for summary judgment as to the three remaining plaintiffs. It then granted ClTGO’s motion to prevent those plaintiffs from testifying at trial about damages, because “after over a year of discovery, not one Plaintiff has yet to provide CITGO with any calculation or estimation of the damages he is seeking.” See Fed.R.Civ.P. 37(b)(2)(A)(ii). Plaintiffs, moreover, had failed timely to designate an expert on damages, and the court had denied their motion to designate out of time.
Because plaintiffs had no way of proving an essential element, ClTGO’s ensuing motion for summary judgment on damages was unopposed. The district court granted that motion, dismissed plaintiffs’ claims with prejudice, and entered final judgment in favor of CITGO. Although CITGO submitted a bill of costs for more than $50,000,[3] the court awarded only $5000, based in part on a finding of ClTGO’s “enormous wealth” and plaintiffs’ “limited resources.”
Both parties appeal. Plaintiffs contend that the district court erred by (1) entering discovery sanctions dismissing seventeen plaintiffs (the “January Sanction”); (2) entering discovery sanctions dismissing four additional plaintiffs (the “March Sanction”); and (3) dismissing the three remaining plaintiffs after preventing them from testifying about damages. CITGO (4) re-urges its motion on the merits as an alternative ground for summary judgment against the final three plaintiffs and (5) avers that the court erred by reducing its cost award.
II.
“A district court has broad discretion, in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.” Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir.2000) (internal quotation omitted). “The district court’s underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de novo.” Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 488 (5th Cir.2012) (internal quotation marks omitted).
Because plaintiffs do not allege a legal error, i.e., it is undisputed that the district court applied the correct test; the only question is whether it clearly erred in its findings of fact. “Clear error review is especially rigorous when we review a lower court’s assessment of trial testimony, because the trier of fact has seen and judged the witnesses.” In re Eldercare Props., Ltd., 568 F.3d 506, 515 (5th Cir.2009) (internal quotation marks omitted).
Rule 37(b)(A)(v) expressly contemplates dismissal, and the district court’s discretion thereunder is broad. Bluitt v. Arco Chem., 777 F.2d 188, 191 (5th Cir.1985). “The courts have consistently demonstrated their willingness to impose the ultimate sanction of dismissal or default.”. GREGORY P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 49(B)(4), at 729 (5th ed.2013) (citation omitted). “[Dismissal is a severe sanction that implicates due process.” FDIC v. Conner, 20 F.3d 1376, 1380 (5th Cir.1994). Rule 37 dismissal, however “must be availr able to the' district court in appropriate cases, not merely to penalize those whose *316 conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.” Nat’l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam).
“The question ... is not ... whether the Court of Appeals [ ] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.” Id. at 642, 96 S.Ct. 2778. The Court’s Rule 37 dismissal guidance is but a specific application of its general instructions regarding clear error review: “If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
[S]everal factors [“Conner factors”] must be present before a district court may dismiss a case with prejudice as a sanction for violating a discovery order: (1) “the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;” (2) the violation of the discovery order must be attributable to the client instead of the attorney, (3) the violating 'party’s misconduct “must substantially prejudice the opposing party;” and (4) a less drastic sanction would not substantially achieve the desired deterrent effect.
Doe v. Am. Airlines, 283 Fed.Appx. 289, 291 (5th Cir.2008) (per curiam) (quoting Conner, 20 F.3d at 1380-81); accord GREGORY P. Joseph, supra, § 49(B)(4), at 740 (quoting Conner, 20 F.3d at 1380-81).
After hearing two days of testimony and making specific findings regarding each of eighteen plaintiffs (January Sanction), the court addressed each factor in detail. As a preliminary matter, plaintiffs contend that an alleged ambiguity in the second discovery order deprived them of “fair notice that their claims were subject to dismissal at the evidentiary hearing.” They cite no authority for that proposition, and notice is not among the Conner factors governing dismissal. As a factual matter, moreover, the order was unambiguous: “Plaintiffs who are found to have violated this Court’s Order to preserve their notes and/or documents, will have their claims dismissed.” The court made specific findings, moreover, that each and every dismissed plaintiff failed to preserve documents.
Plaintiffs maintain that their violation of the discovery order was only negligent. The district court, however, inferred wilfulness from conduct: “Plaintiffs were aware of the Court’s rulings, and nevertheless failed to conduct themselves in accordance with them. This failure evidences a blatant disregard for the judicial process, and constitutes willful and contumacious conduct.”
The court did not abuse its discretion by refusing to credit, following substantial testimony, plaintiffs’ claims that their disobedience was grounded in confusion or sincere misunderstanding. Their failure to request clarification of the order militates against such a finding. See Worrell v. Hous. Can! Academy, 424 Fed.Appx. 330, 337 (5th Cir.2011) (per curiam). Even if such a reading is plausible, the district court’s opposite conclusion— reached after a detailed examination of each plaintiffs conduct — was not implausible. “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly er *317 roneous.” Anderson, 470 U.S. at 574, 105 S.Ct. 1504.
Plaintiffs assert that their failure to preserve handwritten notes and personal emails did not substantially prejudice CITGO. Plaintiffs testified that their work notes contained information that was not available in electronic records or elsewhere. It was therefore not clear error for the district court to conclude that “the notes Plaintiffs routinely destroyed or failed to preserve would have been the best evidence of their daily tasks.” (January Sanction.)
Although conceding it possessed information regarding the duration of plaintiffs’ internet use, CITGO asserts those records are not accurate proxy for how much time was spent on personal email while on the clock. The district court specifically found, however, that “emails go directly to two of Defendant’s defenses” (January Sanction), and CITGO’s prospective trial exhibits included more than twenty emails from the one then-remaining plaintiff who used personal email at work. The prejudice finding was not clearly erroneous.
Plaintiffs contend that dismissal was improper because a less drastic sanction would have achieved the desired effect. They rely primarily on district court and out-of-circuit cases, but this circuit has rejected the view that a court is “required to attempt to coax [parties] into compli: anee with its order by imposing incrementally increasing sanctions.” United States v. $49,000 Currency, 330 F.3d 371, 379 (5th Cir.2003).
The district court dismissed the seventeen plaintiffs only after issuing two discovery orders, one of which specifically warned that dismissal would be the penalty for noncompliance. The court, moreover, entered specific factual findings regarding each plaintiff — and, notably, did not dismiss one plaintiff whom it found to be in compliance. (January Sanction.) On this record, we find no abuse of discretion, notwithstanding the severity of the sanction.[4]
Discovery rulings — especially those taken after live testimony — are peculiarly within the competence of the district court, and the factual findings at issue here are no exception. Plaintiffs’ briefing does not focus on (or even distinguish) their individual courses of conduct, as the district court did, so their claim must be that the district court got it wrong regarding all seventeen dismissed plaintiffs. That is an implausible result, given the plaintiff-specific findings and careful application of each Conner factor to the facts. We therefore affirm the January Sanction.
III.
In its March Sanction, the district court dismissed four additional plaintiffs who disclosed their personal email addresses and passwords after the second discovery order but then either deleted *318 emails or, in the case of one plaintiff, failed to preserve inbox contents. The dismissal again occurred after live testimony, plaintiff-specific findings, and application of the Conner factors.
There was no abuse of discretion. Three plaintiffs deleted emails in direct contradiction of an order — and despite dismissal of their co-plaintiffs, in part, for similar conduct — and a fourth thwarted the order through inaction.
Plaintiffs again attribute their conduct to negligence or misunderstanding rather than wilfulness. The district court, however, characterized that explanation as “particularly disingenuous and offensive in light of the fact that seventeen co-plaintiffs were previously dismissed raising these same tired excuses.” The plaintiffs had at least constructive notice of the second discovery order; allowing parties to avoid sanctions by not reading documents in their own case would erode courts’ ability to enforce their lawful edicts. The implicit finding of wilfulness was not clearly erroneous.
To the extent plaintiffs have preserved a claim that their noncompliance did not prejudice CITGO, the court did not abuse its discretion by finding that “[t]he discovery that was destroyed by plaintiffs may have been essential to CITGO’s defense, and without it, CITGO is certainly disadvantaged. Moreover, CITGO has expended considerable funds in pursuing discovery that has led nowhere.”
Particularly unpersuasive, in the context of the March Sanction, is plaintiffs’ contention regarding a lesser sanction. Plaintiffs elected dismissal with prejudice in lieu of the very sanction they now seek ($100 per deleted email). They did not challenge that choice at the time and will not now be heard to repudiate it. The four plaintiffs dismissed in the March Sanction, moreover, were not in fact deterred by either the discovery orders or the earlier dismissal of seventeen co-plaintiffs for similar conduct. There is no showing that any lesser sanction would have been effective.
IV.
The district court made three significant determinations regarding damages. The court denied the request of the seven remaining plaintiffs to designate a damages expert out of time. It subsequently barred the final three plaintiffs from testifying to damages. Summary judgment on damages followed.
It is somewhat unclear which of these issues, if any, plaintiffs have preserved on appeal. Our independent review of the record shows that neither the denial of plaintiffs’ untimely motion to designate an expert nor the discovery sanction preventing their direct testimony on damages was an abuse of discretion.
At most, plaintiffs’ initial brief could be generously construed as a compound argument that the two rulings on damages, followed by summary judgment, erroneously prohibited them from presenting evidence of damages. Although plaintiffs have explained why they failed timely to designate an expert (which failure they concede), they have not shown that the denial of their motion to do so after the deadline was reversible error. There is no evidence, other than plaintiffs’ ipse dixit> that the court ordered an off-the-record “stand-down” on discovery or that such stand-down, even if ordered, tolled the deadline for designating an expert.
The subsequent order barring plaintiffs from testifying about damages is a sanction that is expressly permitted by Federal Rule of Civil Procedure 37(b) (2) (A) (ii). Whether the district court abused its discretion in deploying it is *319 determined by examining “(1) the importance of the witnesses’ testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party’s failure to comply with the discovery order.” Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 572 (5th Cir.1996).
In applying the Sierra Club factors, the court determined that there was no good explanation for plaintiffs’ delay in providing damages calculations and that allowing testimony without discovery would prejudice CITGO.[5] That “evidence of damages is an essential element of Plaintiffs’ FLSA claims” militates in favor of allowing it, notwithstanding any discovery violations. The court made no explicit finding regarding a continuance, though we note that the trial was continued for eight months after denial of plaintiffs’ motion to designate an expert out of time.
Considering them holistically, the Sierra Club factors weigh in favor of a finding that the court did not abuse its discretion. Especially important is that, “after over a year of discovery, not one Plaintiff ha[d] yet ... provide[d] CITGO with any calculation or estimation of ... damages”— “despite the fact that they had in their possession ... badge records and the Court had specifically informed Plaintiffs that they could provide their ‘best estimate.’ ”
CITGO’s eventual motion for summary judgment on damages was unopposed, and the district court found no remaining issues of material fact. Having consented to the judgment, plaintiffs cannot challenge it for the first time on appeal. See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988).[6]
V.
“Unless a federal statute, the [Federal Rules], or a court order provides otherwise, costs — other than attorney’s fees — should be allowed to the prevailing party.” Fed.R.Civ.P. 54(d)(1). “Because the Rule authorizes the district court to deny the award, we review that exercise of authority for abuse of discretion.” Pacheco v. Mineta, 448 F.3d 783, 793 (5th Cir.2006). It follows that a reduction in a cost award is likewise reviewed for abuse of discretion.
In Pacheco, the court cited a leading treatise for the proposition that “[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party.” Id. at 794 (citation and internal quotation marks omitted). The court enumerated illustrative reasons, but “only for the purpose of exposition.” Id. at 794 n. 18. It expressly declined to “decide whether any of these is a sufficient reason to deny costs.” Id. (emphasis added).
Although it is undisputed that CITGO is the prevailing party, the district court reduced CITGO’s cost award based on (1) a finding of plaintiffs’ good faith, (2) CITGO’s “enormous wealth,” and (3) “Plaintiffs[’] limited resources.” The court erred as a matter of law in relying on CITGO’s “enormous wealth” — or the comparative wealth of the parties — as a basis *320 for reducing the cost award. Neither the district court nor plaintiffs have invoked any Fifth Circuit authority other than Pacheco ’s descriptive list. At least four circuits, however, have rejected a “relative wealth” rationale, and “[t]he fact that the prevailing party is substantially more wealthy than the losing party is not a sufficient ground for denying or limiting costs to the prevailing party.”[7]
[T]he plain language of Rule 54(d) does not contemplate a court basing awards on a comparison of the parties’ financial strengths. To do so would not only undermine the presumption that Rule 54(d)(1) creates in prevailing parties’ favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status.
Cherry, 186 F.3d at 448.
Thus, Congress did not intend Rule 54(d) to be swallowed by an “enormous” or “relative” wealth exception: As a practical matter, the approach adopted by the district court would be impermissibly punitive by preventing profitable corporations such as CITGO from recovering costs when litigating against individuals acting in good faith. Consistent with the great weight of authority from the federal circuits, reducing or eliminating a prevailing party’s cost award based on its wealth — either relative or absolute — is impermissible as a matter of law.
It is not entirely evident whether the district court intended plaintiffs’ “limited resources” to be an independent basis for the cost reduction or whether, instead, it was a dependent part of a comparative-wealth analysis. In any event, we recognize that some circuits have permitted alteration of a cost award based on a combined finding of good faith and limited resources.[8] The parties agree, however, that the question of what role “limited resources” play in reducing an award presents a question of first impression in the Fifth Circuit.
On these facts, we decline to disturb the careful balance established by the Federal Rules, which provide that taxable costs are presumptively awarded to the prevailing party. Where, as here, the prevailing party incurred a few thousand dollars per plaintiff in carefully documented out-of-pocket expenses for taking depositions, and those plaintiffs were making in the neighborhood of $100,000 per year, it would have been reversible error for the district court to reduce the cost award based on a finding of “limited resources.”[9]
*321 The summary judgment is AFFIRMED. The order reducing costs is REVERSED, and a cost award is RENDERED in favor of CITGO for $53,065.72.

. Initially, twenty-six plaintiffs sued; the district court dismissed two who had abandoned their claims. This appeal concerns only the twenty-four remaining plaintiffs.

. Rule 37(b)(2)(A)(v) provides, in relevant part, that “[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders ... including] ... dismissing the action or proceeding in whole or in part....”

. CITGO requested $53,065.72 for deposition transcripts and $2,262.41 for copies. The court denied reimbursement for the latter, a ruling that CITGO does not appeal.

. See Emerick v. Fenick Indus., Inc., 539 F.2d 1379, 1381 (5th Cir.1976) (“It is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction. It is our responsibility solely to decide whether the district court could, in its discretion, have determined the appellant’s conduct to be so flagrant as to justify [the sanctions at issue].”); see also Nat’l Hockey League, 427 U.S. at 643, 96 S.Ct. 2778 ("It might well'be that [tjhese [plaintiffs] would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts. Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case....”).

. See also Fed.R.Civ.P. 37(c)(1) (barring introducing of undiscovered information into evidence unless failure to disclose was harmless or justified).

. Because we affirm the discovery sanctions and summary judgment, we do not reach the alternative grounds proffered by CITGO. We decline to consider whether the district court erred by denying CITGO's initial motion for summary judgment on the merits, because plaintiffs were properly classified as exempt under the FLSA.

. 10 James W. Moore et al., Moore’s Federal Practice § 54.101[l][b], at 54-156 (3d ed.2013); accord In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 468 (3d Cir.2000) (stating that disparities in wealth may not be considered); Smith v. Se. Pa. Transp. Auth., 47 F.3d 97, 99-100 (3d Cir.1995) (per curiam) (holding that plaintiff’s limited resources did not justify reduction of cost award where plaintiff is able to pay); Cherry v. Champion Int’l Corp., 186 F.3d 442, 447-48 (4th Cir.1999) (stating that comparative economic power is not a factor regarding presumption that prevailing party recovers its costs); Reed v. Int'l Union of Auto., Aerospace & Agric. Implement Workers, Local Union No. 663, 945 F.2d 198, 204 (7th Cir.1991) (declaring that financial disparity is no basis to deny costs); Chapman v. AI Transp., 229 F.3d 1012, 1038-39 (11th Cir.2000) (en banc) (reasoning that court should not consider relative wealth of parties).

. E.g., Moore v. Cnty. of Delaware, 586 F.3d 219, 221-22 (2d Cir.2009); Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1022 (9th Cir.2003); Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir.1983).

. This conclusion regarding "limited resources” has no bearing on whether a losing party who has demonstrated indigency may properly be excused from paying a prevailing party’s costs or may properly be permitted to *321 pay reduced costs. See 10 James W. Moore et al., supra, § 54.101[l][b], at 54-157 (“Most circuits hold that a substantiated claim of the losing party's indigency may justify a reduction ... of costs....’’). As their attorney conceded at oral argument, plaintiffs are not indigent, nor did the district court make a finding to that effect.