**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 22, 2014[*]
Decided September 22, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 14-1796

| | |
|---|---|
| MARYAM BENNETT, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 13-cv-20026-DRH |
| | |
| BAYER HEALTHCARE | David R. Herndon, |
| PHARMACEUTICALS, INC., | *Chief Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

After using the oral contraceptive Yasmin, Maryam Bennett developed gallbladder disease and brought this personal-injury action against Yasmin's manufacturer, Bayer Healthcare Pharmaceuticals. The district court dismissed the

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

action with prejudice for failure to comply with discovery. Because the district court's decision was a reasonable exercise of its discretion, we affirm the judgment.

The Judicial Panel on Multidistrict Litigation has centralized for pretrial proceedings more than 1,000 suits concerning the safety of Yasmin and Yaz (a similar contraceptive). After Bennett sued in the Northern District of Georgia, the Panel determined that her suit appeared to involve questions of fact common to the others. It entered a conditional transfer order of Bennett's action to the federal court in the Southern District of Illinois for centralized, pretrial proceedings on its multidistrict litigation docket. *See* MULTIDISTRICT LIT. R. 7.1(b). Concerned that inclusion in these centralized proceedings "could possibly add extra cost and undue stress" and cause unnecessary delay, Bennett moved to vacate the Panel's order. *See id.* 7.1(c), (f). The Panel determined, however, that transfer would not inconvenience Bennett; rather, the transfer would afford her "access to the substantial discovery already conducted" in the Southern District of Illinois and the benefit of "a judge highly familiar with the factual allegations underlying [her] claims."

Pretrial discovery in multidistrict litigation imposes obligations on each plaintiff: In this case, a plaintiff alleging a gallbladder injury is required to notify her healthcare providers that they must preserve any records they have that are relevant to her claims. Within 45 days of the case's transfer to the federal court in Illinois, the plaintiff must serve defense counsel with copies of those notices. If the plaintiff fails to comply, a ten-day "cure period" follows. If the plaintiff still does not comply, the court, on the defendant's motion, may order the plaintiff to show cause why the gallbladder claim should not be dismissed with prejudice. The claim will be dismissed unless the plaintiff has good cause for her noncompliance. The district court notified Bennett of these duties and the penalty for noncompliance.

Nonetheless Bennett refused to serve preservation notices initially and during the cure period. Instead she flooded the court with motions, including for summary judgment, to stay discovery, and to remand the case to Georgia. She also argued that, while her suit was pending in Georgia, she had served Bayer with "all the information the defense needed to get the information for discovery." That information consisted of contact information for her health insurer, pharmacy, physicians, and surgeon; pharmacy records of her Yasmin prescription; and a one-page radiology report. Following Bayer's motion to show cause, the district court admonished Bennett that her torrent of motions, now denied, did not justify disobedience of the order to request that her providers preserve records. Chief Judge Herndon also warned her that she

disregarded the preservation order "at her own peril" and she risked dismissal with prejudice unless she established good cause for her noncompliance.

Bennett responded, not by requesting that her providers preserve records, but by seeking Chief Judge Herndon's recusal. Bennett listed four reasons why she believed that the judge was biased against her: (1) When she emailed him a request to take "special notice" of her case, he concluded that the email was ex parte; (2) he "failed to carefully review [her] motions before ruling"; (3) his "rapport" with Bayer had "prejudice[d] him" against Bennett; and (4) he required Bennett to "repeat steps, waste more time, money and resources" without explaining his reasoning. The judge's partiality, Bennett added, gave her good cause for disregarding his discovery orders.

The district court had had enough. First it rejected Bennett's motion for recusal. "[D]ispleasure" with its rulings, the court explained, is "not an adequate basis for recusal." The court then dismissed Bennett's claims with prejudice, explaining that despite the warnings to her, she had not issued preservation notices or shown good cause for failing to do so.

On appeal Bennett raises only three principal challenges that we need discuss. First she contests the Panel's transfer of her case to the multidistrict litigation docket in Illinois. We may review an order of the Panel only by extraordinary writ, 28 U.S.C. § 1407(e); *FedEx Ground Package Sys., Inc. v. U.S. Judicial Panel on Multidistrict Litig.*, 662 F.3d 887, 890 (7th Cir. 2011), which Bennett has not sought. Her failure arguably precludes our review of the Panel's determination. *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014).

But even if, because she is pro se, we were to construe Bennett's notice of appeal as a petition for a writ of mandamus, *see, e.g., United States v. White*, 582 F.3d 787, 793 (7th Cir. 2009), her challenge would lose on the merits. The Panel may centralize for pretrial proceedings actions that involve "common questions of fact" if doing so "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Only an outlandish decision justifies reversing the Panel's order. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) ("[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion" justify mandamus relief.) (internal quotation marks and citations omitted); *FedEx Ground Package Sys., Inc.*, 662 F.3d at 890–91. Here Bennett's claim—that her gallbladder injuries arise from her use of Yasmin—appears to share factual questions in common with the other suits alleging that Yasmin or Yaz caused

other gallbladder injuries. *See Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16, 19 n.3 (1st Cir. 2004). The Panel thus reasonably concluded that transfer to the multidistrict litigation docket in Illinois would benefit the parties, including Bennett who would gain access to the discovery already conducted on these common questions.

Bennett next argues without merit that Chief Judge Herndon should have recused himself because of personal bias; his refusal to recuse, she contends, renders his adverse rulings, such as denying her request to remand the case to Georgia, suspect. *See* 28 U.S.C. § 455(b)(1). To establish bias, Bennett needed to present "evidence that would lead a reasonable observer to believe that the judge was incapable of ruling fairly." *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). All Bennett puts forth is her general dissatisfaction with the district court's rulings, but adverse rulings by themselves do not evince favoritism or antagonism. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *White*, 582 F.3d at 807.

Finally Bennett asserts that the district court abused its discretion by dismissing the action as a sanction for refusing to comply with its order requiring her to request preservation of her records. *See* FED. R. CIV. P. 37(b)(2)(A)(v); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). As best we can tell, Bennett believes that the disclosures that she provided when her case was in Georgia (her provider contact information, prescription records, and radiology report) complied with the court's order. But the court ordered her to ask her providers to preserve *everything* relevant to her claim in *their* records, and she defied that order. An order to preserve records is reasonable because it maintains potentially relevant evidence that an adversary may need to litigate a claim or defense. *See, e.g., Palmer v. City of Chicago*, 755 F.2d 560, 573 (7th Cir. 1985); *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 314–17 (5th Cir. 2013). By defying this reasonable discovery order, Bennett unjustifiably imperiled Bayer's defense to her claim. Furthermore, the district court repeatedly warned Bennett that she risked dismissal if she continued to flout the preservation-notice requirement. *See In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1237 (9th Cir. 2006). But despite notice, warning, and ample opportunity to cure, Bennett obstinately persisted, showed no prospect of obedience, and furnished no sound excuse for her intransigence. Under theses circumstances the court did not abuse its discretion in concluding that her defiance was willful and dismissing the action with prejudice. *See Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 778–79 (7th Cir. 2013) (explaining that willful defiance of court discovery order can warrant dismissal); *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190–91 (7th Cir. 2011) (same); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d at 1233 (same).

We have considered Bennett's remaining arguments, and none merits further discussion. Therefore, we AFFIRM the district court's judgment.