# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20734
Summary Calendar

United States Court of Appeals
Fif h Circuit

**FILED**
August 10, 2017

Lyle W. Cayce
Clerk

OPREX SURGERY (BAYTOWN), L.P.,

      Plaintiff - Appellant

v.

SONIC AUTOMOTIVE EMPLOYEE WELFARE BENEFIT PLAN,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2330

Before JOLLY, SMITH, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Oprex Surgery (Baytown), L.P. ("Oprex") appeals from the district court's dismissal of its lawsuit as a sanction for purported "recalcitrance and disobedience" that "violate[d] the rules and court orders." Because the district court abused its discretion in dismissing Oprex's case, we reverse and remand.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20734

Defendant-Appellee Sonic Automotive Employee Welfare Benefits Plan ("Sonic" or "the Plan) is a self-funded employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Oprex is a surgery center operating in Baytown, Texas. It acted as an "out-of-network" or "non-participating" provider of medical services to certain members of the Plan. Oprex, as authorized representative of these members, sued Sonic, *inter alia*, under § 1132(a)(1)(B) to recover benefits due under the Plan for services Oprex provided. During pre-trial discovery, Sonic requested a status conference to address unspecified discovery issues. The court granted its request and scheduled a telephone conference on October 4, 2016. That same day, the court *sua sponte* dismissed the case on the grounds that Oprex "failed in its responsibility to support its case" and "evaded two direct orders about the underlying data and related algorithms or other techniques for calculating its prices."

We review the district court's dismissal for abuse of discretion. *Natl. Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994). Although the district court did not specify the authority it relied upon in ordering dismissal, the parties agree that this matter is appropriately reviewed under the standard governing discovery sanctions pursuant to Federal Rule of Civil Procedure 37.[1]   Rule 37(b)(2)

---

[1] We note that Federal Rule of Civil Procedure 41(b) also permits a district court to dismiss a plaintiff's action for "failure to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir. 1985). The district court's statement that Oprex "failed in its responsibility to support its case" suggests a failure to prosecute as a ground for dismissal. In so far as failure to prosecute constituted a ground for dismissal, we would similarly hold that the court abused its discretion. *See Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 252 (5th Cir. 1984) (We will affirm dismissal under Rule 41(b) only "upon a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, *and* (b) where lesser sanctions would not serve the best interests of justice." (emphasis added)); *accord Sturgeon*, 778 F.2d at 1159. We fail to see a showing, much less a clear showing, of either factor on the record before us.

No. 16-20734

"empowers a district court to impose 'just' sanctions on parties who disobey a discovery order." *Conner*, 20 F.3d at 1380. These sanctions may include "dismissing the action in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). "While the trial judge, who is most familiar with the circumstances surrounding the litigation, has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct, we have imposed important limitations on that discretion." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

"[D]ismissal is a severe sanction that implicates due process." *Moore v. CITGO Refining and Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Conner*, 20 F.3d at 1380). Although it "must be available to the district court in appropriate cases," *Natl. Hockey League*, 427 U.S. at 643, this "draconian remedy" "should not be used lightly, and should be used . . . only under extreme circumstances," *Conner*, 20 F.3d at 1380 (quoting *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993)); *see also Marshall v. Segona*, 621 F.2d 763, 768 (5th Cir. 1980) ("[D]ismissal is to be sparingly used and only in situations where its deterrent value cannot be substantially achieved by use of less drastic sanctions.").

Thus, we have held that several factors must be present before a district court may dismiss a case with prejudice as a sanction for violating a discovery order: (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct"; (2) the violation must be attributable to the client instead of the attorney; (3) the violating party's misconduct must substantially prejudice the opposing party's preparation for trial; and (4) "a less drastic sanction would [not] substantially achieve the desired deterrent effect." *Conner*, 20 F.3d at 1380–81 (citations omitted); *see also Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985).

3

No. 16-20734

As a preliminary matter, we observe that the district court made no explicit findings in its dismissal order as to any of the *Conner* factors. A district court need not provide specific factual findings in every sanction order; however, our review must reveal an adequate basis in the record for the sanction imposed. *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993). If the sanctions are substantial, our review necessarily will be more rigorous as such sanctions must be quantifiable with some precision. *Id.* (quoting *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 883 (5th Cir.1988) (en banc) (discussing sanctions under Fed. R. Civ. P. 11)). The record here falls far short of what we have deemed is sufficient to justify dismissal.

First, it is not apparent from the record that Oprex refused to comply with the two discovery orders at issue, much less did so willfully or in bad faith. The first of these two discovery orders, issued on July 1, 2016, required in pertinent part that the parties exchange by August 11, 2016, "the documents relevant to this claim, including data explaining how Oprex Surgery (Baytown), L.P., determines its prices."[2] By declaration of its trial counsel, Oprex represents that it provided Sonic with the documents and information required by the court's order, and it submits the email correspondence demonstrating its compliance. The email from Oprex's counsel concludes, "If you need any explanations or clarification, please feel free to call[.]" After Sonic raised some issues with the information provided, Oprex's counsel

---

[2] From the face of the order, it is unclear to what "this claim" refers or the scope of documents that would be relevant to it; however, we surmise from the transcript of the hearing on that date that the court is referring to the "one issue" that it perceived to be relevant to Oprex's § 1132(a)(1)(B) claim: "What is the reasonable price for the services that were necessary and actually performed [by Oprex]?" Oprex contends that this issue is, in fact, irrelevant to its claim because it is suing solely to recover benefits due under the Plan, which are capped at "the allowed amount" set by the Plan, unless the provider's billed charge is less than the allowed amount. As Oprex never objected to the court-ordered discovery, we draw no conclusions as to the relevance of Oprex's pricing, or its reasonableness, to any of the claims on which it is suing.

attempted to confer with Sonic's counsel numerous times, but was unable to discuss the matter before the next pretrial conference that was held on August 29, 2016.  At that conference, various discovery-related issues were discussed and Oprex's counsel expressed willingness to supplement Oprex's responses with the additional materials Sonic desired.  The court warned Oprex's counsel that if the requested information was not provided, "they [referring to Oprex] lose.  It's real easy. . . . They have got to prove the case."

Following the conference, the court issued its second pertinent discovery order, dated August 29, 2016, which directed Oprex to provide Sonic by September 9, 2016, "[t]he program and algorithm [Oprex] used to set billable rates charged for out-of-network services for 2011-2014"; and "[a] spreadsheet of co-payments and deductibles paid by the claimants."  The court further ordered the parties to jointly report a mediation schedule by September 23.

Oprex represents that it began to collect the required information, but the process proved longer than anticipated.  Therefore, it filed an unopposed motion for a one-week extension, which the court granted.  One week later, Oprex provided Sonic with additional documents and information to satisfy the court's August 29 order.  As with the last production, Oprex's counsel stated in his email, "if you have any questions about the calculation methods, or if you need anything, I'm in the office all day today[.]"  Sonic's counsel responded, "Thanks, I will review."

Oprex then initiated the process of selecting mediators to propose for the upcoming joint mediation report (for which the court had also granted an extension to September 30) and counsel emailed a list of possible mediators on September 28.  In his reply, Sonic's counsel expressed, for the first time, "concerns about the discovery responses your client has provided, including your charge information pursuant to Judge Hughes' order."  Rather than explain more fully what those concerns were, counsel stated, "We believe

another status conference is needed.  Please let me know if your client will oppose our request for a status conference."  In the joint mediation report that Sonic later filed, it provided the name of the mediator the parties agreed upon and requested another status conference:

> [Sonic] would like another status conference with the Court to discuss the status of discovery in this matter prior to committing to mediation dates.  [Oprex] feels it has satisfied the document request put forward in the previous court order, and thus there is no need for another status conference with the Court.  Counsel for Sonic cannot be available October 6, 18-20, 2016, but can otherwise make himself available for such a status conference.

The court scheduled a telephone conference on October 4.  One hour before the conference, Sonic submitted a "Supplemental Status Conference Memorandum," in which it detailed the ways that it believed Oprex's production inadequately responded to the court's August 29 order.  Among other things, it represented to the court that Oprex "offer[ed] no specifics as to any algorithms or formulas used to establish Oprex's charges" during the relevant period.  In the very next sentence, however, Sonic stated that Oprex explained in an email that it had based its rates on those Medicare set for the same service and generally multiplied those rates by 12.5.  In the referenced email, Oprex's counsel further said that Oprex had looked at other similarly situated facilities in Oprex's region and determined they were charging up to 15 times Medicare's rate.  Sonic complained to the court that Oprex gave no explanation for how they settled on "12.5 times Medicare," nor specified which other facilities were allegedly charging 15 times Medicare's rate.  Sonic further objected that Oprex did not provide any analysis of what it or other out-of-network facilities were receiving in reimbursements.  It concluded by requesting the court's intervention to compel Oprex to comply with the court's orders and its discovery obligations and further requested appropriate sanctions for Oprex's "continued noncompliance."

No. 16-20734

At the conference, Oprex attempted to explain how it arrived at the "12.5 times Medicare" algorithm. Apropos to Sonic's memorandum, the court expressed dissatisfaction that Oprex had not provided the list of comparator institutions that it had surveyed in arriving at its rate, although—as Oprex justifiably protests—this information was not clearly within the scope of the court's order to provide "[t]he program and algorithm [Oprex] used to set billable rates charged for out-of-network services for 2011-2014." Nonetheless, the court stated, "I am prepared to strike the complaint and dismiss it." Oprex's counsel attempted to respond; however, the court cut him off and invited Sonic to offer its views on the matter. Unsurprisingly, Sonic agreed that dismissal would be an appropriate sanction. Thereafter, and without providing Oprex an opportunity to respond, the court declared, "the complaint will be dismissed and judgment --"

At this point, Oprex's counsel interjected, "Your honor, if I may. We -- as somebody who has taken over this case from those individuals that you have named [referring to Oprex's prior counsel in the matter], I have done my utmost and in my best faith to comply with all the Court orders." The court was unsympathetic. It stated, "you have not complied" and "there is a point at which the recalcitrance reveals severe defect in the client." Oprex's counsel beseeched the court for another week to procure the desired information, but to no avail.

That same day, the court entered its dismissal order. Oprex subsequently filed a motion for relief from judgment or alternatively for new trial, which the court denied in a one-sentence order. Oprex timely appealed.

This is the record before us. And Sonic disputes none of it. Whether or not Oprex's discovery responses could have been more fulsome, we fail to see how its responses constitute "noncompliance" with the court's orders. Moreover, there is no indication in the record that Oprex sought willfully or in

bad faith to defy the orders, nor is there any hint in the record of "delay or contumacious conduct," *Conner*, 20 F.3d at 1380. The fact is, Sonic raised no complaint, in a motion to compel or otherwise, regarding the adequacy of Oprex's responses until one hour before the conference.

Nor do we have enough facts to determine whether the alleged deficiencies in Oprex's responses are attributable solely to Oprex, instead of its attorney, who apparently had only recently taken over the case. As for prejudice, Sonic does not attempt to elucidate with law or facts how its ability to put on a defense was substantially undermined by Oprex's discovery responses, relying instead on block quotes from the October 4 conference. It adds that it was prejudiced by incurring the time and expense of having counsel travel twice to Houston and participate in a third conference by phone. Oprex replies that such is not the prejudice required under the *Conner* factors, which contemplate only prejudice to "the opposing party's preparation for trial," *U.S. v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). We agree.

Finally, there is no indication that the court considered lesser sanctions before ordering dismissal with prejudice, a most severe sanction that we have deemed to be a "remedy of last resort," *Batson*, 765 F.2d at 515. Although we have stated that a district court is not required to impose "incrementally increasing sanctions" before dismissing a party's case, *Moore*, 735 F.3d at 317, given the important due process concerns implicated by a dismissal with prejudice, the court should at least consider the efficacy of lesser sanctions first, *Conner*, 20 F.3d at 1380.[3] Furthermore, we are troubled by the district

---

[3] Relying on *Moore*, 735 F.3d at 317, Sonic argues that the district court specifically warned Oprex that its case would be dismissed by stating at the August 29 conference that if Oprex did not produce, "they lose. It's real easy." *Moore* is distinguishable from this case. There, the court's discovery order stated: "Plaintiffs who are found to have violated this Court's Order to preserve their notes and/or documents, will have their claims dismissed." *Id.* at 316. Here, no such explicit warning was provided, and certainly not in an order

court's failure to provide any meaningful opportunity to Oprex to be heard regarding Sonic's discovery concerns.[4]

On the record before us, we are constrained to conclude that the district court's dismissal sanction falls well outside the bounds of its broad discretion in adjudicating discovery matters. *See Conner*, 20 F.3d at 1382; *Batson*, 765 F.2d at 516; *Marshall*, 621 F.2d at 769.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

pursuant to Rule 37(a)—"the notice required to effectively warn a party before [Rule] 37(b) sanctions can be imposed," *Segona*, 621 F.2d at 766 n.2.

[4] We note that there are only 23 lines in the hearing transcript between the court's statement that it was "prepared to strike the complaint and dismiss it," and its statement that "the complaint will be dismissed." Moreover, in those 23 lines, the court prevented Oprex from responding, while asking, instead, for Sonic's views on the propriety of dismissing the case against it.