# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2012

No. 11-60462

Lyle W. Cayce
Clerk

VERNITA BELL, Individually and on Behalf of E.A.B, Deceased; K.A., by and Through Jestina Alsworth, Her Natural Mother, Adult Next Friend and Guardian Ad Litem; JESTINA ALSWORTH, Individually and on Behalf of T.A. and M.A., Deceased; P.F., By and Through Patricia Felton, Her Natural Mother, Adult Next Friend and Guardian Ad Litem; S.D., By and Through Brenda Doss, Her Natural Mother, Adult Next Friend and Guardian Ad Litem; KATIE COLENBURG, Individually and on Behalf of I.C., Deceased; THELMA SANDERS; CARL ELLIS; JOHN SCOTT; MARY CULBERT; BETTY SCOTT; JAMES SCOTT; BERTHA FRANKLIN; LEVANDER DAVIS,

Plaintiffs-Appellants

v.

TEXACO, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court for the
Southern District of Mississippi
U.S. Dist. Ct. No. 5:09–CV–192–KS–MTP

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60462

A group of personal injury plaintiffs appeal the district court's determination that it had subject matter jurisdiction over this case and its ultimate disposition of the case in which it awarded monetary sanctions and dismissed the case for discovery violations.  We AFFIRM.

## I. FACTS AND PROCEDURAL BACKGROUND

The underlying dispute concerns injuries allegedly sustained due to exposure to toxic chemicals that leaked from abandoned underground storage gasoline tanks in Fayette, Mississippi.  The property was once owned by W. Joe Brown, long-since deceased, who operated a gas station on the premises, before transferring the property to his son who sold it to the county in 1978.  The plaintiffs in this case ("Plaintiffs") were employees and patients of a Jefferson County mental services facility subsequently located at the property.  They allege that they were exposed to gas vapors from the leaking underground tanks, which led to permanent injury.

Plaintiffs filed this action against Texaco, Chevron, W. Joe Brown and his estate (collectively the "Brown Estate"), the Southwest Mississippi Mental Health Foundation ("Mental Health Foundation"), and Doe defendants in Mississippi state court in 2009.  Texaco and Chevron[1] removed the case to federal court under diversity jurisdiction, asserting that the non-diverse defendants were either nominal or improperly joined.  Plaintiffs sought remand and began, with the leave of the district court, to conduct discovery relating to the viability of their claims against the non-diverse defendants.  After discovery and briefing, the district court denied Plaintiffs' motion to remand, finding that the non-diverse defendants had been improperly joined.  Plaintiffs filed three motions for reconsideration, each of which the district court denied.

---

[1] Claims against Chevron were later voluntarily dismissed by Plaintiffs.

No. 11-60462

Discovery began in the district court and was met with frequent delays and failures by Plaintiffs over the course of several months to produce the court-ordered interrogatories and other information.[2]  Several status conferences were held during which the court attempted to impress upon Plaintiffs the importance of complying with court orders and discovery requests.  After extended unsuccessful efforts to compel Plaintiffs and their attorneys to act, the court sanctioned Plaintiffs under Rule 37, awarding costs and fees for the delays to Texaco.  Following another failure by Plaintiffs to timely respond to the order imposing fees, Texaco filed a motion to dismiss the case for failure to comply with the court's orders, which the court granted.

## II. STANDARD OF REVIEW

The denial of a motion to remand is reviewed de novo.  *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).  The removing party bears the burden of establishing jurisdiction.  *Id.*

We review the district court's imposition of sanctions under Federal Rule of Civil Procedure 37 for an abuse of discretion.  *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76-77 (5th Cir. 2011).  "[T]he question we address is not whether this Court, in its own judgment and as an original matter, would have imposed any of these sanctions.  Rather, we ask only whether the district court abused its discretion in doing so."  *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976)).  Factual findings underlying the imposition of sanctions are reviewed for clear error.  *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010).

---

[2] The factual record relies upon the district court's highly detailed recounting of the discovery process.  *Bell v. Texaco, Inc.*, 5:09cv192KS-MTP, 2011 WL 2446577 (S.D. Miss. June 15, 2011).   The parties did not challenge the facts as narrated by the district court.

3

No. 11-60462

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

Plaintiffs argue in their reply brief that the district court did not have subject matter jurisdiction in this case because complete diversity of citizenship between the parties did not exist.[3] Whether the district court had jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 depends on if the non-diverse defendants—the Brown Estate and the Mental Health Foundation—were improperly joined in the original suit. As citizens of Mississippi, their joinder would destroy the diversity of citizenship that exists between appellants (all citizens of Mississippi) and Texaco, a Delaware corporation with its principal place of business in California.

The federal removal statute, 28 U.S.C. § 1441(a) allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," with exceptions. Subsection (b) specifies that suits not arising under federal law are removable only if none of the "parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The doctrine of improper joinder entitles a diverse defendant to remove a case to a federal forum if an in-state defendant has been improperly joined. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). One way to establish improper joinder is to show an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

---

[3] Although the law is well-established that issues not raised in an opening brief are waived, *see Lockett v. E.P.A.*, 319 F.3d 678, 684 n.16 (5th Cir. 2003), jurisdictional arguments may not be waived, *see Bailey v. Cain*, 609 F.3d 763, 764 (5th Cir. 2010). Therefore, we must address the issue of jurisdiction here, regardless of the inadequacy of Plaintiffs' briefing. *See* FED. R. CIV. P. 12(h)(3)*; Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884).

No. 11-60462

The parties concede that the Brown Estate and the Mental Health Foundation are, or would be, citizens of Mississippi for diversity purposes. Therefore, the inquiry is whether Texaco can show that there is no possibility that Plaintiffs can establish a cause of action against the Brown Estate and the Mental Health Center in Mississippi state court, or rather "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. The determination of whether a claim exists requires that "there must be a *reasonable* possibility of recovery, not merely a theoretical one." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quotation marks and citation omitted). The burden of persuasion on the party asserting the improper joinder is a "heavy one." *Id.*

In determining whether a non-diverse defendant has been improperly joined, the court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. The district court also may, in its discretion, "pierce the pleadings" to consider summary judgment-type evidence, including affidavits and deposition testimony. *Id.*, at 573-74. In doing so, however, the court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.

We nonetheless review de novo the district court's determination of improper joinder and denial of remand based on this summary inquiry. *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005). After examining the Plaintiffs' claims against the named Mississippi defendants below, we conclude that Texaco met its burden in demonstrating that Plaintiffs could not establish

a cause of action against either defendant. Therefore, the district court was correct to dismiss Plaintiffs' motion to remand, and had subject-matter jurisdiction over the case pursuant to § 1332.

Other than a "belief," the Plaintiffs never provided any evidence to contravene the Mental Health Foundation's evidence that it was never, at any point in time, in a position of control over the land (and gas tanks) at issue. Plaintiffs cannot sustain a tort action based on premise liability against an entity that had no control over or connection with the property at issue. *See Brookhaven Funeral Home, Inc. v. Hill*, 820 So. 2d 3, 6 (Miss. Ct. App. 2002) ("In order to prove 'liability on the part of an owner or occupant of premises for injuries resulting from the condition of the premises,' a plaintiff must, as a preliminary matter, show that the defendant had occupation or control." (quoting *Wilson v. Allday*, 487 So.2d 793, 796 (Miss. 1986)). The district court correctly found that joinder of the Mental Health Foundation was improper.

The district court found that any potential claims against the Brown Estate are time-barred under the Mississippi statute of limitations applying to trusts. *See* MISS. CODE ANN. § 15-1-25. The statute provides that claims against an estate must be brought within four years of the appointment of the estate's executor or administrator.[4] *Id.*; *see also* MISS. CODE ANN. § 91-7-239; *Townsend*

---

[4] Plaintiffs urged the court to consider an annotation to § 15-1-25, suggesting that the section "does not apply to causes of action which accrue after the death of the decedent." MISS. CODE ANN. § 15-1-25, Annot. 2. However, Mississippi case law makes clear that the types of claims exempt from the statute of limitations are narrowly construed to cover claims attributable to the administrator, as opposed to claims for personal injury attributable to the decedent or occurring during the decedent's lifetime. *See, e.g., Tom E. Taylor Undertaking Co. v. Smith's Estate*, 183 So. 391 (Miss. 1938); *Sivley v. Summers*, 57 Miss. 712 (Miss. 1880) *Bingaman v. Robertson*, 25 Miss. 501 (Miss. 1853);.

In contrast, claims for personal injuries allegedly caused by the decedent, as here, are subject to the limitations period of § 15-1-25. *See Powell v. Buchanan*, 147 So. 2d 110, 112 (Miss. 1962); *Jones v. Evans*, 156 So. 2d 742, 743-44 (Miss. 1963). Plaintiffs' claims against the Brown Estate do not involve any action by the administrator, but arise from the decedent's alleged tortious conduct during his lifetime. The four year statute of limitations applies.

No. 11-60462

*v. Estate of Gilbert*, 616 So.2d 333, 335-36 (Miss. 1993) (the four year statute of limitations period begins to run after a ninety day exemption, so a claimant must bring an action within four years and ninety days of the issuance of the letters of administration).  W. Joe Brown died over twenty years ago, and the estate itself was closed in 1998.  Plaintiffs initially brought this action in 2009.

Mississippi has expressed a public interest in finality of claims against estates. *See Townsend*, 616 So.2d at 337.  Allowing Plaintiffs to file claims more than 25 years after Brown's death would defeat the purpose of the Mississippi special statute of limitations applying to estates.  Moreover, Texaco produced evidence showing that W. Joe Brown deeded the property to his son in 1975, three years before the gas station ceased its sales. The gas station on the property stopped selling Texaco products in 1978.  The land was sold by Brown's son to the county in 1979. The abandonment of the underground tanks necessarily had to occur after the time the property ceased selling the Texaco gas. W. Joe Brown was not the owner of the property at that time.  The trial court concluded that it could "not foresee any possibility of recovery against a former operator of the tanks, particularly in light of the thirty-four intervening years." *Bell v. Texaco*, 5:09cv192KS-MTP, 2010 WL 1490144, at *4 (S.D. Miss. April 13, 2010).  Plaintiffs offer no competent evidence to the contrary.  Thus, the district court did not err in concluding that the Brown Estate was  improperly joined.

Since the joinder of both named Mississippi defendants was improper as a matter of law, the district court was correct to deny Plaintiffs' multiple motions to remand, and to exercise jurisdiction over the case pursuant to § 1332 on the basis of complete diversity.

## B.    Monetary Sanctions

Plaintiffs appeal the district court's imposition of monetary sanctions, totaling $23,617.44, for failing to comply with discovery orders.  The district

7

court has authority, in its discretion, to impose sanctions against a party who fails to cooperate in discovery. FED R. CIV. P. 37. The district court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3). We review the imposition of sanctions for abuse of discretion. *Brown*, 664 F.3d at 76-77.

Plaintiffs in this case repeatedly missed deadlines and failed to participate in discovery. The district court provided numerous time extensions and opportunities for Plaintiffs to justify their noncompliance, to no avail. Plaintiffs were warned that the court would impose sanctions for this behavior, but they continued to ignore court orders. The amount of the sanctions was derived from an itemization provided by Texaco, to which Plaintiffs failed to respond or challenge in the district court. Plaintiffs offered no countervailing justification for their delays other than the attorneys' difficulty in reaching their clients. Based on Plaintiffs' total failure to heed court orders and participate in discovery, we conclude that the district court did not abuse its discretion in imposing monetary sanctions upon Plaintiffs.

## C.   Dismissal

The district court is authorized under FED. R. CIV. P. 37(b)(2)(A) to dismiss a complaint with prejudice for failure to comply with a discovery order. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985). We review a Rule 37 dismissal for abuse of discretion, considering a number of factors, including bad faith, deterrence, prejudice, and negligence. *Id.*; *see also Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989). Applying this standard to the facts of this case, we have no difficulty concluding that the district court did not abuse its discretion in dismissing Plaintiffs' case with prejudice under Rule 37(b)(2).

No. 11-60462

First, "dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply." *Prince*, 876 F.2d at 32. Willfulness may be demonstrated by a party's "failure to comply with the court's discovery order even after he was personally instructed to do so . . . and stated that he understood what was required of him." *Chisesi v. Auto Club Family Ins. Co.*, 374 Fed. App'x 475, 477 (5th Cir. 2010) (unpublished). Willfulness can also be evidenced by a repeated failure to provide anything other than generalized or non-responsive answers in response to specific requests for compliance by the court. *See Yazdchi v. American Honda Fin. Corp.*, 217 Fed. App'x 299, 303 (5th Cir. 2007) (unpublished). The district court is permitted to "rely on its complete understanding of the parties' motivations." *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998).

Here, the district court found that Plaintiffs' repeated failure to comply with discovery orders, even after being warned of the possibility of sanctions and personally instructed on how to comply, constituted willful noncompliance. Their attorneys argue that noncompliance was due to communication difficulties rather than willfulness or bad faith. The attorneys claim they "had a difficult time reaching the Plaintiffs, communicating with the Plaintiffs, and obtaining detailed discovery information from the Plaintiffs." This argument does not stand in the face of the repeated discovery violations committed. Plaintiffs regularly ignored court orders, even those ordering the submission of information as basic as "a list of the Plaintiffs' alleged symptoms or injuries." On two occasions, Plaintiffs misrepresented that they had complied with an order with which they had *not* in fact complied. They admitted being in possession of requested documents and provided no reasoning to explain the failure to produce them. Plaintiffs and their counsel were repeatedly warned, the consequences were explained to them, and they still did not participate in discovery. The district court did not abuse its discretion in concluding that

No. 11-60462

Plaintiffs' serial failures to comply with discovery orders constituted willful noncompliance.

Second, "dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Prince*, 876 F.2d at 32. The district court did impose lesser sanctions, the order of money sanctions in order to reimburse Texaco, prior to dismissing the case. At that time, the court again warned Plaintiffs that their case would be dismissed as a punitive sanction if they continued to ignore court orders. This warning had no apparent effect on Plaintiffs' behavior in the litigation. We conclude that the district court did not abuse its discretion in determining that Plaintiffs' previous failure to adhere despite the imposition of less drastic sanctions indicated that additional monetary sanctions would not have ensured compliance.

Third, we consider "whether the other party's preparation for trial was substantially prejudiced." *Id.* at 32. The district court found that Plaintiffs' failure to provide interrogatory responses or any expert witnesses for more than one year after the removal of the case substantially prejudiced Texaco's trial preparation. Plaintiffs argue Texaco had access to "far more information" than customarily available, given that a similar case had previously been litigated in state court. However, there is no law that suggests that the availability of information from a separate litigation precludes a finding of prejudice. Regardless of the availability of information in other litigation, the district court did not abuse its discretion in finding that Plaintiffs' noncompliance in this case caused significant delay and required the filing of multiple motions to compel. As such, it was not an abuse of discretion to conclude that Texaco was substantially prejudiced by Plaintiffs' noncompliance.

Finally, the law cautions that "dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or

when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders." *Id.* at 32. The district court found here that while the attorneys in this case bore the majority of responsibility for noncompliance, the clients were not blameless in causing the harm. As their attorneys themselves argued, the clients in this case were apparently noncommunicative and difficult to reach. However, at the final status conference, the clients were in attendance and were personally instructed by the court of the importance of complying with discovery orders. They had specific knowledge of the effects on their claim of their failure to comply and continued the pattern of noncompliance. We conclude that the district court did not abuse its discretion in finding that the clients were not blameless.

Considering all four factors applied to Plaintiffs' repeated noncompliance with court-ordered discovery, the district court's order to dismiss the case with prejudice was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the district court's dismissal with prejudice of the case and the imposition of monetary sanctions against the Plaintiffs is AFFIRMED.